## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

NATHAN ISAACS, on behalf of        )
Jaylyn Isaacs, a minor child,      )
and JEROME SNIDER, on behalf of    )
Lilly Snider, a minor child,       )
                                   )    Case No. CIV-20-358-KEW
            Plaintiffs,            )
                                   )
v.                                 )
                                   )
KONAWA PUBLIC SCHOOL DISTRICT      )
I-004, THE BOARD OF EDUCATION      )
OF KONAWA PUBLIC SCHOOLS,          )
JOSEPH SCOGGINS, as employee of    )
KONAWA PUBLIC SCHOOLS, and         )
OKLAHOMA SCHOOL INSURANCE GROUP,   )
as Statutory Insurer of KONAWA     )
PUBLIC SCHOOLS,                    )
                                   )
            Defendants.            )

## OPINION AND ORDER

Plaintiff Nathan Isaacs initiated this action on behalf of
his daughter, Jaylyn Issacs ("Jaylyn") and Plaintiff Jerome Snider
initiated this action on behalf of his daughter, Lilly Snider
("Lilly") in the District Court of Seminole County, Oklahoma on
August 31, 2020, against Defendants Independent School District I-
004 of Seminole County, Oklahoma, the Konawa Public Schools (the
"School District"), the Board of Education of Konawa Public Schools
(the "Board"), Joseph Scoggins, as an employee of Konawa Public
Schools ("Scoggins"), and the Oklahoma School Insurance Group, as
the statutory insurer of the School District ("OSIG"). The action
was removed to this Court on October 12, 2020. On October 19, 2020,

the Defendants filed their Partial Motion to Dismiss and Brief in Support (Docket Entry #3). On November 23, 2020, Plaintiffs' Response and Objection to Defendants' Motion to Dismiss and Brief in Support (Docket Entry #11) was filed. The parties consented to the undersigned judge on December 2, 2020. Defendants filed their Reply to Plaintiffs' Response to Defendants' Motion to Dismiss & Brief in Support (Docket Entry #15) on December 7, 2020. Defendants' Partial Motion to Dismiss now comes before the Court for ruling.

## Plaintiffs' Allegations

On March 8, 2019, Plaintiffs' minor daughters, Jaylyn and Lilly, were members of the Konawa Junior High softball team, when they were involved in an accident while traveling on the School District's activity bus with four other members of the softball team and its driver, Scoggins, who was a coach and School District employee. When returning from a softball game that evening, the activity bus was involved in a head-on collision with an SUV, driven by third-party John Tallbear ("Tallbear"), near Bowlegs, Oklahoma, in Seminole County. *See* Petition, ¶¶ 4, 6, 10, 14 (Docket Entry # 2-1).

Plaintiffs allege that prior to the accident, Jaylyn was sitting in the third row of the bus when she saw the oncoming vehicle. She yelled, "Get down!" and dove toward the floor under the seat in front of her. Upon impact, she hit the seat post,

causing her to cut her head open, and she also slammed her hip, abdomen, pelvis, and left arm into the floor of the bus. *Id.* at ¶ 12. Plaintiffs contend that Lilly was standing behind Scoggins at the time of the crash, which resulted in her being thrown through the windshield and losing consciousness. She does not remember the accident. Lilly allegedly suffered a fractured jaw, facial lacerations, broken teeth, cuts and bruises, and injury to her right shoulder. *Id.* at ¶ 13.

Plaintiffs also allege that Jaylyn and Lilly were passengers on the activity bus with their teammate and friend, Rhindi Isaacs ("Rhindi").[1] Rhindi was Jaylyn's cousin. Rhindi was standing in the stairwell of the bus, which was the point of impact where the vehicles collided. She did not survive the accident. In addition to suffering physical injuries and trauma related to the accident, Plaintiffs contend Jaylyn and Lilly are grieving the loss of their friend and teammate. *Id.* at ¶¶ 31-33.

Plaintiffs further assert that although the bus had no protective devices, Scoggins chose to veer into the left lane to avoid the collision, when the SUV driven by Tallbear corrected back and was in the same lane as the bus. They allege other drivers

---

[1]    A separate but related lawsuit filed by the mother of Rhindi Isaacs was removed to this Court from Seminole County, Oklahoma in June of 2020. *See* Case No. CIV-20-187-KEW. On March 31, 2021, this Court granted the motions to dismiss filed in the case and remanded the remaining state law claims to the District Court of Seminole County. On April 23, 2021, Plaintiff filed a notice appealing the Court's decision.

in the path of the SUV pulled over to the side of the road and stopped to allow the erratic SUV to pass by them. *Id*. at ¶ 14.

In their Petition, Plaintiffs assert the following claims against the School District, the Board, Scoggins, as an employee of Konawa Public Schools, and OSIG: (1) state law claims for negligence under the Oklahoma Governmental Tort Claims Act ("GTCA"), and (2) federal claims under 42 U.S.C. § 1983 for violation of the Due Process Clause under the Fifth and Fourteenth Amendments to the United States Constitution.

Defendants filed their partial motion to dismiss, seeking dismissal of (1) the Board, arguing it is not a proper party to the lawsuit because it is not a legal entity capable of being sued; (2) OSIG, arguing it is an improper party to the action, and (3) Scoggins, arguing the official capacity claims brought against him under § 1983 are claims against the School District. Defendants also seek dismissal of any state law negligence claims alleged by Plaintiffs under certain GTCA exemptions based upon negligent hiring, training, supervision, and retention, and failing to adopt or enforce policies related to chaperones and teachers and coaches serving as bus drivers. Defendants further seek dismissal of Plaintiffs' federal claims brought under 42 U.S.C. § 1983 for violation of Jaylyn's and Lilly's substantive due process rights, including claims brought under the special relationship and danger creation exceptions. Defendants do not, however, seek dismissal of

Plaintiffs' common-law negligence claims. *See* <u>Defendants' Partial</u>
<u>Motion to Dismiss</u> (Docket Entry #3).

**Standard on a Motion to Dismiss**

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme
Court set forth the plausibility standard applicable to a motion
to dismiss filed under Fed. R. Civ. P. 12(b)(6). Clearly, *Bell*
*Atlantic* changed the legal analysis applicable to such motions,
creating a "refined standard." *Khalik v. United Airlines*, 671 F.3d
1188, 1191 (10th Cir. 2012) (citation omitted). *Bell Atlantic*
stands for the summarized proposition that "[t]o survive a motion
to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim for relief that is plausible
on its face.'" *Ashcroft*, 556 U.S. at 678, quoting *Bell Atlantic*,
550 U.S. at 570. The Supreme Court did not parse words when it
stated in relation to the previous standard that "a complaint
should not be dismissed for failure to state a claim unless it
appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief" is "best
forgotten as an incomplete, negative gloss on an accepted pleading
standard." *Bell Atlantic*, 550 U.S. at 546.

The Court of Appeals for the Tenth Circuit has interpreted
the plausibility standard as referring "to the scope of the
allegations in the complaint:  if they are so general that they

encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). The *Bell Atlantic* case, however, did not intend the end of the more lenient pleading requirements of Fed. R. Civ. P. 8(a)(2). *Khalik*, 671 F.3d at 1191. Rather, in *Khalik*, the Tenth Circuit recognized the United States Supreme Court's continued endorsement of Rule 8's "short and plain statement" requirement in the case of *Erickson v. Pardus*, 551 U.S. 89 (2007), wherein the Supreme Court found "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id*. at 93.

## Initial Matters Regarding Defendants' Motion

### 1) The Board and OSIG are not proper parties to the action

In response to Defendants' motion, Plaintiffs concede in their response brief that the Board and OSIG are not proper parties to the action. *See* Plaintiffs' Response, p. 3 (Docket Entry #11). Accordingly, the Court finds that the Board and OSIG are not proper parties to this action, and they are hereby dismissed.

### 2) Section 1983 Official Capacity Claims Against Scoggins

The School District contends that the federal claims brought against Scoggins in his official capacity under § 1983 should be dismissed because they are merely claims brought against the School

District, which is also named as a defendant in the action. This Court agrees that such claims are duplicative and should be dismissed as against Scoggins in his official capacity. *See D.L. v. Unified School Dist. No. 497*, 392 F.3d 1223, 1227 (10th Cir. 2004) (recognizing district court's dismissal of official capacity claims as redundant of naming of District); *Rubio v. Turner Unified School Dist. No. 202*, 453 F.Supp.2d 1295, 1300 (D. Kan. 2006) (suit against both the school district and individuals in their official capacities was duplicative).

In their response, Plaintiffs do not contest that any official capacity claims alleged against Scoggins are subject to dismissal as claims against the School District. Instead, Plaintiffs argue they have sued Scoggins in his individual capacity under § 1983. A review of the Petition and Summons issued in the case, however, does not support Plaintiffs' argument.

The Petition alleges "Scoggins is a resident of Seminole County and was at all times during this cause of action, an employee of Konawa Public Schools[.]" Petition, ¶ 4 (Docket Entry #2-1). Moreover, the Alias Summons issued to the Konawa Public Schools, Scoggins (employee of Konawa Public Schools), and Konawa Board of Education lists the address for the School District. *See* Notice of Removal (Docket Entry #2-2). Further, Defendants' Notice of Removal states that at the time of removal, neither Scoggins nor OSIG was served with process. *Id*. at p.2 (Docket Entry #2).

The Court entered a scheduling order in this case on December 3, 2020, at which time the parties were given until December 18, 2020 to amend the pleadings or join parties. Plaintiffs never did so, even though Defendants had previously filed their Notice of Removal and their partial motion to dismiss, which indicated Scoggins was not sued individually. Accordingly, the Court dismisses the federal claims against Scoggins, as they are only alleged against him in his official capacity.

## Plaintiffs' Federal Claims

1) <u>Municipal Liability</u>

When a § 1983 claim is asserted against a municipality, such as the School District, a court must consider "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original). To impose liability on a municipality under § 1983, a plaintiff must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. County Bd. of Comm'rs*, 151 F.3d 1313, 1316 (10th Cir.

1998). Thus, a municipality is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible[.]" *Monell*, 436 U.S. at 691.

2)  Substantive Due Process Claims

Plaintiffs contend in their Petition that under § 1983 the School District violated the due process rights of Jaylyn and Lilly in violation of the Fifth and Fourteenth Amendments to the United States Constitution.[2] Plaintiffs assert the Board knew there was a chronic shortage of bus drivers and chaperones, but it continued to vote and approve activity trips for students placing them in danger of injury or death. Petition, at ¶ 20. They contend the School District was deliberately indifferent to student safety and needs in three areas. First, Plaintiffs allege the School District violated national safety standards, specifically standards from the National Transportation Administration, which appear on the Oklahoma Superintendent of Schools website and are recommended for all Oklahoma schools, and require that chaperones accompany students on activity trips. Plaintiffs maintain that had a

---

[2]  The Court notes that "[t]he Due Process Clause of the Fifth Amendment applies only to action by the federal government while the Due Process Clause of the Fourteenth Amendment applies to actions by state governments." *Koessel v. Sublette County Sheriff's Dept.*, 717 F.3d 736, 748 n.2 (10th Cir. 2013). Based on the allegations of the Petition, Plaintiffs have no claim for relief under the Fifth Amendment.

chaperone been on the bus at the time of the accident, the chaperone could have ensured students were safely seated and accounted for after the accident. *Id*. at ¶ 22. Second, Plaintiffs assert the School District was understaffed and did not have adequate bus drivers to transport students on activity trips. This shortage required that teachers perform the duties of teacher, coach, and bus driver, creating situations where students were transported by "a distracted driver" and thereby resulting in a known risk to student safety. *Id*. at ¶ 23. Third, Plaintiffs contend that Scoggins should have stayed right of center instead of leaving his lane or pulled over on the shoulder, and it was the School District's failure to train its bus drivers in this regard that demonstrates deliberate indifference to the safety needs of the students. *Id*. at ¶ 24.

"The Fourteenth Amendment prohibits a State from depriving 'any person of life, liberty, or property without due process of law.'" *Hernandez v. Ridley*, 734 F.3d 1254, 1258 (10th Cir. 2013), quoting U.S. Const. amend. XIV, § 1. The substantive component of the Due Process Clause of the Fourteenth Amendment "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990), quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986). The Tenth Circuit has held that "there must be an element of deliberateness in directing the misconduct toward

plaintiff before the Due Process Clause is implicated." *Seamons v. Snow*, 84 F.3d 1226, 1234 (10th Cir. 1996); *see also Daniels*, 474 U.S. at 331 (noting the guarantee of due process applies to "deliberate decisions of government officials to deprive a person of life, liberty, or property"). However, the clause is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989). Thus, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id*.

A violation of substantive due process is "not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels*, 474 U.S. at 328 (emphasis in original). "Generally, state actors may only be held liable under § 1983 for their own acts, and not for the violent acts of third parties." *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002), *cert. denied*, 538 U.S. 999 (2003), citing *DeShaney*, 489 U.S. at 197. There are, however, two exceptions to the general rule: (1) the special relationship exception and (2) the danger creation exception. Here, Plaintiff appears to allege a substantive due process violation under both the exceptions.

a) <u>Special relationship exception</u>

In their response brief, Plaintiffs argue that "Defendants stood in such a position that they had 'an affirmative duty to provide protection' to [Jaylyn and Lilly] as students on the bus." <u>Plaintiffs' Response</u>, p. 9, quoting *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003). The law is clear, however, that any relationship between Jaylyn and Lilly with the School District does not establish the type of special relationship contemplated to state a substantive due process claim.

A special relationship arises when "the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the 'deprivation of liberty' triggering the protections of the Due Process Clause[.]" *DeShaney*, 489 U.S. at 200. "Inaction by the state in the face of a known danger is not enough to trigger the obligation[,]" because "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament . . . but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.*; *see also Graham v. Independent School District No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994) ("In the absence of a custodial relationship, we believe plaintiffs cannot state a constitutional claim based upon the defendants' alleged knowledge of dangerous circumstances.").

In *Maldonado v. Josey*, the Tenth Circuit determined that "[a]lthough a child may well be in the 'custody' of the school authorities during school hours, this custody does not amount to a restraint that prohibits the child and his parents from caring for the basic needs of the child." 975 F.2d 727, 732 (10th Cir. 1992), *cert. denied*, 507 U.S. 914 (1993). Here, the accident injuring Jaylyn and Lilly occurred after school hours. Their parents had a choice whether to allow them to ride the bus to and from the softball game. *See DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1234 (10th Cir. 2000) (relying on *Maldonado* and finding no special relationship and no due process violation of plaintiff, who attended a city day-camp program, because he was not in the custody of the state and his parents remained his primary care giver). Thus, because there is no special relationship between Jaylyn and Lilly with the School District, Plaintiffs' substantive due process claims based on the special relationship exception fail.

b) <u>Danger creation exception</u>

Plaintiffs also contend liability by Defendants under the danger creation exception. *See* <u>Plaintiffs' Response</u>, p. 9. "To invoke the danger-creation exception, a plaintiff must establish as a threshold matter (1) private violence, and (2) affirmative conduct on the part of the state in placing the plaintiff in danger." *Hernandez*, 734 F.3d at 1259, citing *Gray v. University of*

*Colo. Hosp. Auth.*, 672 F.3d 909, 920 & n.8 (10th Cir. 2012). If these preconditions are met, a plaintiff must then satisfy all elements of a six-part test: "(1) [defendant] created the danger or increases plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking." *Id*. (quotation omitted).

The Court finds Plaintiffs have not satisfied either precondition of the danger creation exception. They have pointed to no conduct by Scoggins or the School District that was affirmative conduct placing Jaylyn and/or Lilly in danger. First, there was no conduct directly aimed at Jaylyn and or Lilly. *See Ruiz*, 299 F.3d at 1183 ("[T]he conduct should be directed at a discrete plaintiff[.]"). In *Gray v. University of Colorado Hosp. Auth.*, 672 F.3d 909 (10th Cir. 2012), the Tenth Circuit found that "because the act of establishing such policies and customs does not pose a direct threat to any one particular individual but affects a broader populace, we deem such act too remote to establish the necessary causal link between the danger to the victim and the resulting harm." *Id*. at 926, citing *Ruiz*, 299 F.3d at 1183. It concluded that "Defendants' adoption of policies and customs

14

generally applicable to all EMU patients, even if done in reckless disregard of a generalized risk, did not constitute affirmative conduct sufficient to impose § 1983 liability on Defendants under the state-created danger theory." *Id*. at 927. Second, negligence or inaction are not enough to establish affirmative conduct. *See Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013) ("There is, however, a question as to whether there is sufficiently affirmative conduct on the part of the state in placing the plaintiff in danger. Our precedents consistently conclude that mere negligence or inaction is not enough."). Accordingly, Plaintiffs have not demonstrated affirmative conduct by the School District based upon any policies, customs, or procedures.

The other precondition, private violence, "requires a private act of violence to have caused the victim's harm." *Hernandez*, 734 F.3d 1254, 1259 (10th Cir. 2013), citing *Gray*, 672 F.3d at 928. "Violence requires "*[a]t the very least*" some degree of deliberateness on the part of the private actor; negligence is insufficient." *Id*. (emphasis in original), citing *Gray*, 672 F.3d at 928-29. Plaintiffs have not alleged in the Petition that Tallbear's driving was an act of violence. The only mention of any action by Tallbear is "that the factual allegations as described herein constitute negligence and/or gross negligence" of Defendants and Tallbear. Petition, ¶ 18, p. 3. "[N]o constitutional violation occurs when a private party's underlying negligent act

15

is directly responsible for the victim's harm." *Hernandez*, 734 F.3d at 1259.

  c)  Conscious Shocking Conduct

In any event, even if Plaintiffs can establish a special relationship or meet the preconditions for the danger creation exception, they must also make a showing that the complained of conduct is conscience shocking. *See Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (noting that a plaintiff's duty to allege actions that shock the conscience applies to the special relationship and danger creation exceptions). To meet this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995); *see also Koessel*, 717 F.3d at 750 ("Even most intentionally inflicted injuries caused by misuse of government authority will not meet this standard.")(citation omitted). "[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 574. This "requires a high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort[.]" *Id*.

When considering whether conduct is conscience shocking, courts should "bear in mind three basic principles highlighted by

the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Id.* at 573 (citations omitted). Whether such conduct shocks the conscience is a question of law for the court. *See Perez v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*, 432 F.3d 1163, 1168 n.4 (10th Cir. 2005); *see also Moore*, 438 F.3d at 1040 ("The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.") (quotation omitted).

Considering Plaintiffs' allegations as true, the Court finds the alleged conduct is not conscience shocking in a constitutional sense. Plaintiffs have not demonstrated deliberate conduct intended to injure Jaylyn and Lilly. The Petition asserts that Scoggins veered from the right lane of traffic into the left lane of traffic to avoid hitting Tallbear's SUV, which was traveling in the right lane. At the same time, Tallbear elected to return the SUV to the left lane. Jaylyn was sitting in the third row of the bus and Lilly was standing behind Scoggins. Although Scoggins' decision to veer into the left lane to avoid the SUV instead of pulling to the side of the road could be viewed as negligent or perhaps even reckless to the safety of all the students on the

bus, his decision does not "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 574; *see also DeAnzona*, 222 F.3d at 1235 ("[M]ere negligence does not shock the conscience.") and *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (noting that conscience shocking conduct requires something more than negligent, reckless, or even intentional conduct).

Moreover, regarding any alleged policies, customs, or procedures of the School District, they also do not rise to the level of conscience shocking. *See Green v. Post*, 574 F.3d 1294, 1302 (10th Cir. 2009) ("To rise to the level of a constitutional violation, a deliberately indifferent act must be one which is conscience-shocking—the Supreme Court has acknowledged that not every deliberately indifferent action will rise to the 'constitutionally shocking level.'"), quoting *Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003). Violations of state law do not constitute a violation of the Federal Constitution. *See Nordlinger v. Hahn*, 505 U.S. 1, 26 (1992) ("A violation of state law does not by itself constitute a violation of the Federal Constitution."). Moreover, failing to follow certain state and federal regulations or recommendations does not rise above the level of negligence. *See Ruiz*, 299 F.3d at 1184 (finding that state defendants' failure to conduct requisite background and insurance checks based on state

18

and federal statutes and regulations governing child care licensing did not rise above the level of negligence and therefore did not constitute conscience-shocking conduct). Further, "[e]ven knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." *DeAnzona*, 222 F.3d at 1235; *see also Moore*, 438 F.3d at 1041 ("[T]he Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort and that merely allowing unreasonable risks to persist in the workplace is not necessarily conscience shocking."), quoting *Uhlrig*, 64 F.3d at 574, citing *Collins*, 503 U.S. at 128.

Accordingly, the Court finds neither the alleged conduct of Scoggins nor the alleged policies, customs, or procedures of the School District are shocking to this Court's judicial conscience in a constitutional sense. In making this determination, the Court has considered the basic principles set out by the Supreme Court for evaluating substantive due process claims, and in reaching the decision, exercises restraint in defining the scope of such a claim, accounts for concern that § 1983 not replace state tort law, and gives deference to local policymaking bodies in making decisions impacting upon public safety. *Uhlrig*, 64 F.3d at 573 (citations omitted). Plaintiffs have therefore failed to satisfy the requirements for municipal liability against the School District on their substantive due process claims.

### Amendment of the Pleadings

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." However, a court may deny amendment upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendment, or futility of the amendment. *See Frank v. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

"Rule 7 requires a request for relief to be made by a motion that (1) is in writing, (2) 'states with particularity the grounds for seeking the order,' and (3) specifies the relief sought." *Albers v. Board of Cty. Comm'rs of Jefferson City, Colo.*, 771 F.3d 697, 706 (10th Cir. 2014), quoting Fed. R. Civ. P. 7(b). In *Albers*, the court "recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." *Id*. Here, Plaintiffs never sought leave to file an amended complaint by formal motion, instead making a generic request to amend in their response in opposition to Defendants' motion. Nor did they specify the factual allegations they would allege in an amended complaint, only stating that they should be entitled to conduct discovery before the merits of their claims are decided. *See Albers*, 771 F.3d at 706 ("[A] bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's

request to amend and the particular grounds upon which such a request would be based.") (citation omitted).

Moreover, as previously discussed herein regarding federal individual capacity claims against Scoggins, Defendants filed the Notice of Removal on October 12, 2020, indicating Scoggins had not been served individually, and Defendants then filed their partial motion to dismiss on October 19, 2020, indicating the deficiencies in Plaintiffs' Petition. Plaintiffs made only an informal and general request to amend in their response brief filed on November 23, 2020. The Court then entered a scheduling order which provided a deadline of December 18, 2020, to amend the pleadings or add parties. Plaintiffs never filed an amended pleading or otherwise formally requested leave to amend. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time. Efficient adjudication of disputes requires that the party present its best effort to state a claim before the court addresses the motion to dismiss.").

Accordingly, the Court denies Plaintiffs' informal request for leave to amend.

## State Law Claims

As detailed herein, Plaintiffs' Petition fails to state a federal claim upon which relief can be granted against the School

21

District. The only remaining claims are state law claims of negligence, which come before the Court only on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). If a case has been removed from state court and the federal claims are dismissed by the federal court, it has discretion to either dismiss the state law claims or remand them to state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Here, based on the authority in 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims of negligence. The claims are hereby remanded to the District Court of Seminole County, Oklahoma.

IT IS THEREFORE ORDERED that Defendants' Partial Motion to Dismiss and Brief in Support (Docket Entry #3) is hereby **GRANTED**, in relation to Plaintiffs' claims for violations of Jaylyn Isaacs' and Lilly Snider's Fourteenth Amendment rights to substantive due process. Moreover, the Board and OSIG are dismissed as parties to the action. Further, any federal claims against Scoggins are dismissed. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims of negligence, and they are therefore **REMANDED** to the District Court of Seminole County, Oklahoma.

IT IS SO ORDERED this 29th day of June, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE